This opinion was pronounced in December term last, and was suspended by a motion for a rehearing, which was granted; it is now printed with the opinion after the rehearing.
Martin, J.
delivered the opinion of the court last December. The plaintiff’s counsel urges, that a will cannot be attacked on the ground of the testator's insanity, unless his interdiction was at least provoked during his life; that when a will contains a clause attesting the testator's sanity, parol evidence cannot be admitted to disprove it; that an affidavit for a continuance, on the ground of newly discovered evidence, needs not to be made by the party himself, but may be so by the counsel, or attorney-at-law.
I. Both parties admit, that before the promulgation of the Code, the party attacking a will, on account of the insanity of the testator, had no need to shew that the interdiction of the latter had been provoked.
The Code therefore affords us the only rule *26 of conduct, though we may be aided by the labours of law writers, and by the decisions of courts.
It is difficult to find any sense in the article relied on by the plaintiff’s counsel, “after the death of a person interdicted, the validity of acts done by him or her, cannot be contested for cause of insanity, unless the interdiction was pronounced or petitioned for, previous to the death of such a person.” Code Civil, 80, art. 16.
In the French text, the words person interdicted, are rendered by un interdit.
Now can there be any interdicted person, whose interdiction was not pronounced previous to the death of such person? Can any one be interdicted after his death?
It is evident that in transcribing the corresponding article of the Napoleon Code, the words un interdit, have been substituted to the words un individu.
Are we at liberty to correct this error, and to substitute in the English text, the words an individual, to the words a person interdicted, or to erase the word interdicted?
The counsel of both parties have argued as if we were, and it is the only manner of giving any meaning to the words of the legislature.
*27 Taking this for granted, it is clear that if no other part of the Code control this article, donations are not excepted from it.
The defendants present the following, as a part of the Code which controls this article, “to make a donation inter vivos or mortís causá, one must be of sound mind." Id. 208, art. 5.
The sanity of an alienor is, without this article, required in every case. Not less in a sale, exchange, &c. than in a donation.
A statute ought to be so construed, that every part of it may have some meaning and effect. If a donation be not put on a different ground than any other alienation, what effect has this last article of the Code?
In emphatically and expressly requiring the sanity of a donor, the legislature made it more particularly a sine quá non of this kind of alienation, which the donee, or the person claiming under him, may be called on to establish, even when the donation is not formally attacked, on account of its absence; we incline to the opinion of the jurists and courts of France, who have held that the two corresponding articles of the Napoleon Code are to be construed together, so as to exclude donations from the operation of the first.
*28 The evident object of this article was the protection of alienees, from the rapacity of near relations of an insane person, who might neglect to have him interdicted, in order to induce purchases from him, with the view of causing them to be afterwards set aside.
A donee, legatee, or instituted heir, needs no such protection; as he gives nothing, he cannot be injured.
If this be the case, as to a donation inter vivos, it must be particularly so as to a last will. The persons, around a dying man, might easily defeat the rights of the heir at law, if they could improve a moment of delirium or stupor so ordinary before dissolution, to procure an apparent will, that would baffle investigation; unless the heir had such timely notice as would enable him to provoke the interdiction of the dying man.
II. The next point seems to have been before us in the case of Langlish vs. Schons & al. 5 Martin, 405. We there held that a public act might be impeached, by the witnesses who subscribed it. The declaration of such witnesses, in this as in every other case, may be opposed by other testimony.
*29 III. The affidavit of the attorney-at-law, or counsel, stating the discovery of new evidence, not in the knowlege of the party, and which the latter could not have discovered, is not sufficient, when his silence or absence is not accounted for.
It is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.
The following opinion was now pronounced after a rehearing;—
Martin, J.
After a mature reconsideration of the opinion pronounced in this cause in December last, it does not appear to me that there would be any propriety in making an alteration in its dispositions.
It seems to me, the continuance was rightly denied, even if it be clear that the affidavit was properly made by the attorney-at-law instead of the plaintiff.
I express no opinion whether an attorney in fact, who represents a slave suing for his freedom, may be received instead of the party. Judge Porter, before his departure, having doubted the correctness of the opinion of the court in this respect, but acquiescing with *30 us in all the other parts of it, admitting the propriety of the continuance being denied on the affidavit, even if it were made by the party herself. I think it better to reserve the final settlement of the question, for a case in which the solution of it may be necessary to a decision.
Livingston for the plaintiff, Mazerau for the defendants.
Mathews, J. concurred.